ALEXANDER P. FRIES, APPELLANT, VS. GEORGE B. GRIFFIN, APPELLEE.

1. Where a court of equity exercises jurisdiction for the purpose of re-establishing a lost deed, with all the parties in interest before the court, and the only question at issue is the amount and description of the land conveyed in the lost deed, and the issue being found against the grantors therein, it will, upon proper prayer, retain jurisdiction of the case and make a final decree enjoining the grantors in said deed from further prosecuting a suit in ejectment against a party in possession of the land claiming title from the grantee in said deed. (*Griffin vs. Fries*, 23 *Fla.* 173, 2 *South. Rep.* 266.)

2. A due regard to individual rights, as well as sound policy, requires that in cases of the establishment of lost instruments, the proof as to the contents, or the substance of the contents of the operative parts of such instruments, should be clear and satisfactory.

3. The grantee in a quit-claim deed is not regarded in this State as an innocent purchaser without notice.

4. Under the rule as to the character of proof required to establish lost instruments, held that the decree of the referee in this case should not be reversed on the ground that it is not supported by the evidence.

Appeal from the Circuit Court for Duval county.

The facts of the case are stated in the opinion of the court.

*R. B. Archibald*, for Appellant.

*Call* and *Adams*, for Appellee.

MABRY, C. J.:

A bill was filed in the Circuit Court by Griffin, appellee, against Fries, appellant, stating in substance as follows, *viz:* On or about the 15th day of August, 1883, Isaac Roberts and wife, by deed of warranty

duly executed and acknowledged in conformity to the laws of Florida, conveyed to complainant (appellee here), and let him into the possession of a certain tract of land situated in Duval county in this State, and particularly described in the bill. Said deed was duly recorded in the clerk's office for Duval county on the 25th day of August, 1883. That the lands therein described were purchased by the said Roberts from one William Alsop about the year 1855, and the said Alsop, at the time of the purchase, conveyed the said lands by suitable deed of conveyance in fee simple, (a substantial copy of which being attached as an exhibit to the bill) to Roberts, and he, from the time of his purchase, held possession and control of the lands up to the time they were conveyed to appellee; that at the time of his said purchase from Alsop, Roberts took actual possession of said lands and exercised ownership over the same until after the termination of the late war, when he moved from Duval county to Alachua county, in this State, and he then left said lands in charge of an agent; that Roberts retained in his possession the deed to himself from Alsop, but being an unlearned man, did not have the same recorded; and sometime after the war handed it to his said agent, who was then trying to negotiate a sale of the lands for Roberts; that said agent retained possession of said deed for sometime, and it was thereafter lost or mislaid, and can not be found; that on or about the 10th day of March, 1881, Fries (the appellant) procured a quit-claim deed for said lands to be made to him by the said Alsop, but that Fries, at the time of the making of the quit-claim deed, and previous thereto, was informed, and well knew, that the lands were claimed by Roberts as his property, and that Alsop had made and delivered a deed conveying said

lands to him, Roberts, many years previous to that time; and with such knowledge Fries procured the quit-claim deed to be made for a small consideration, and had it recorded in the office for the record of deeds in and for Duval county, thereby fraudulently contriving and proposing to acquire title to said lands. Further, that when said quit-claim deed was executed, Roberts was the owner in fee of said lands, and the same were generally known and recognized to be his property, and that Alsop had no title thereto, or right to make said pretended deed thereto; and that the same was further void for the reason that Alsop was not at the time in possession of the lands, and it is charged that he consented to make the quit-claim deed at the request of Fries for a nominal consideration, and assumed no responsibility whatever as to the validity of the title conveyed; that on the 6th day of March, 1885, Fries instituted a suit of ejectment against appellee on the law side of the court for the recovery of the lands, and said suit was then pending and at issue; and subsequent thereto Fries filed a bill in equity in the court asking that appellee be enjoined from cutting timber or otherwise committing waste on said lands. That it was material to the assertion of appellee's rights in the ejectment suit on the law side of the court that said lost deed be re-established before the trial in the ejectment suit, and in order to protect appellee in the enjoyment of his said property as against subsequent purchasers or creditors without actual notice of the said lost deed. It is also alleged that the said quit-claim deed was recorded in book A J, page 796, of the records of Duval county, and constituted a cloud upon appellee's title, and detracted from the value of his said lands, and should in equity be removed. The bill prayed for the re-establishment

of the lost deed from Alsop to Roberts; that the quit-claim deed from Alsop to Fries be adjudged fraudulent, and of no effect as against appellee, and that Fries be enjoined from further prosecuting his said suit of ejectment, and for process.

The answer admits that it may be true that Isaac Roberts and wife, on or about the 15th day of August, 1883, executed a paper purporting to be a deed of conveyance to the complainant, but it is denied that said deed conveyed any lands whatever. The quit-claim deed from Alsop to appellant, in March, 1881, is admitted, and it is alleged that a good and valuable consideration was paid for the same. The allegations of the bill in reference to the ejectment suit are also admitted, but all the other material allegations of the bill upon which complainant relied for relief are denied by the answer. It is denied that Roberts ever purchased the land from Alsop, or ever obtained any deed for same, or was ever in the possession thereof. In addition to the denial that Roberts was ever the owner or in possession of the land, it is alleged in the answer that when he executed the said deed to appellee, in August, 1883, appellant was the owner and in possession of the land. His ownership is based upon tax titles, and also the quit-claim deed from Alsop to him, in March, 1881. It is alleged that appellant acquired title to said lands by tax deeds from the State; the first bearing date in May, 1878, and that while holding under said tax deeds, and while in possession of the lands thereunder, the quit-claim deed was obtained from Aslop as a matter of compromise between them, and for the consideration expressed therein; that in the year 1878, and within a few months after obtaining and recording his tax deed, appellant went with witnesses to the lands—they be-

ing then wild and unoccupied lands—and peaceably and quietly took possession of the same with his witnesses, and read his deed and posted notices of his claim upon the lands; that by said notices he warned all persons from trespassing upon the lands, and also sent copies of notices to all persons then known to appellant to be trespassers thereon, and also appointed C. W. Fink, then living on the adjoining land, as agent, and from that time until appellee, in 1885, fraudulently and unlawfully obtained possession of the land, appellant remained in quiet, notorious and peaceable possession of the lands, cutting and selling timber from the same from time to time, and using the same for fuel, fencing and other purposes. It is distinctly alleged that appellant was in possession of the land in 1883, when appellee secured the deed from Roberts, and also that it was not necessary that the pretended deed upon which appellee bases his claim to title should be re-established to enable him to make his defense to the said ejectment suit, as that such defense, if it is good, can be set up and proven on the common law side of the court.

After the general replication was filed and proof taken, the case was referred to a referee for hearing and disposition, and on final hearing the referee decreed in favor of the prayer of appellee's bill.

The foregoing bill was filed after the decision of this court in the case of Griffin vs. Fries, 23 Fla. 173, 2 South. Rep. 266, was rendered, and it is apparent that within the principle of that case appellee was entitled to the relief prayed, if the allegations of his bill were sustained by proof. The only contention here for appellant is that the evidence does not warrant the decree rendered. It is contended in the first place that the evidence does not sufficiently show that any deed

to the land in question was ever executed by William Alsop to Isaac Roberts; and, in the second place, it is insisted that if the evidence does sufficiently show that such deed was executed, it is shown by the evidence that appellant was in the adverse possession of the land when Roberts conveyed it, or attempted to convey it, to appellee.    There is considerable matter introduced into the record in this case that it is not competent testimony, and should have no bearing in determining the questions presented.  Objections were made to some of the objectionable testimony when introduced before the master, but it appears that counsel submitted the case to the referee on the entire record, and no ruling was asked or made as to the competency of any of the testimony.   We have examined the testimony with care, and after disregarding that part of it that has no material bearing upon the questions argued, have reached the conclusion that the decree appealed from should be affirmed.   In considering the evidence we have not lost sight of the proper rules applicable in such cases.   A due regard to individual rights, as well as sound policy, requires that in cases of the establishment of lost instruments, the proof as to the contents, or the substance of the contents of the operative parts of such instruments, should be clear and satisfactory.   Chief-Justice Marshall says, in Taylor vs. Riggs, 1 Peters, 591, that the substance of the agreement ought to be proved clearly and satisfactorily, and if that can not be done, the party is in the condition of every other suitor in court who makes a claim which he cannot support.   Metcalf vs. Van Benthuysen, 3 N. Y. 424.   The decision in Christie vs. Burch, 25 Fla. 942, 2 South. Rep. 258, does not conflict with the rule announced.   When a deed to real estate has been lost and the contents thereof have been established,

Christy vs. Burch holds that a liberal presumption will be indulged in favor of the due execution of the deed, but it does not decide that the contents, or the substance of the contents of the lost deed need not be clearly and satisfactorily shown. Applying the rule stated to the evidence before us, our conclusion is that the decree of the referee should not be reversed on the ground that the evidence is insufficient to support it. Alsop and Roberts were both dead when the testimony was taken. Two witnesses swore to the existence of the deed from the former to the latter, and other circumstances shown corroborate their testimony, while no witness denies that such deed did exist. The weakest part of the case is in reference to the sufficiency of proof as to the land conveyed in the deed, but the testimony, aided by the plat introduced in evidence, is sufficient, we think, in the absence of any negative testimony.

The tax deeds relied upon by appellant are void upon their face, and under his quit-claim deed, to say nothing of the proof before us (Snow vs. Lake, 20 Fla. 656, S. C. 51 Am. Rep. 625), he can not be regarded as an innocent purchaser without notice; and Alsop had no title at the time he executed the quit-claim deed. An adverse possession sufficient to defeat the conveyance from Roberts to Griffin is not shown, in our judgment, and this part of the defense failed.

The decree appealed from will be affirmed, and it is so ordered.